Good morning. May it please the Court, my name is Sarah O'Connell from Covington and Burling. I'm appearing for Petitioner, Ms. Sophia Daire. I hope to reserve three minutes of my time for rebuttal. You speak as if you've been here before. Your Honors, in this case we have a petitioner who has no violent convictions, no drug convictions beyond simple possession, but she does have a very severe and debilitating mental illness. The district court in her case erred when it held that despite the fact that her ineffective assistance of counsel claim met both prongs of the Strickland test, even under the heightened AEDPA standards, largely because her sentencing counsel failed to investigate, present, or develop any evidence of this mental illness and display it to the sentencing court, it could not grant relief to Ms. Daire because it was constrained by a Ninth Circuit panel decision. This is a bad hand because there are other, at least one recent other panel that did simply apply the Strickland test. In that case, not where it's applied, but where any circuit in the United States has specifically held and announced that Supreme Court precedent clearly establishes that Strickland applies in a non-capital sentencing context. Yes. Not where they apply it, but where they actually say it. Yes. Glover versus the United States is a 2001 Supreme Court case. The Supreme Court considered a Seventh Circuit decision and it said, quote, we hold that the Seventh Circuit erred in engrafting this additional requirement onto the prejudice branch of the Strickland test, end quote. It remanded the case with instructions. That said the error with respect to applying Strickland, but the Supreme Court did not say that Strickland actually applies. I thought that there, the issue was they kind of conceded both sides went on the proposition that Strickland was applicable. The Supreme Court did not make that announcement in that case. I disagree. The Supreme Court considered what the proper measurement of prejudice ought to be in an ineffective assistance of counsel claim in a non-capital sentencing case. 2001, four years before the panel decision. This Ninth Circuit has been wrong since that time of making declarations that it hasn't been clearly established. Correct. However, from a practical point of view, for all those other petitioners, but for Ms. Dare, it wouldn't matter because though the Ninth Circuit panel decision said we're constrained from applying Strickland, it did apply Strickland to all those other petitioners anyway and found that they didn't meet at least one prong of the Strickland test. Ms. Dare is the only petitioner who has a district court decision saying that she does meet both prongs of the Strickland test. So for her, it matters. This unanimous ---- I want to go back to Strickland itself. It seems that there is at least confusion as to whether Strickland applies in this context. But Strickland itself doesn't say that it doesn't apply in a non-capital case. Why ---- where has that confusion arisen from? Section 2254d1 of AEDPA requires that law be clearly established by the United States Supreme Court. It's a heightened requirement. Strickland does not say that it does not apply in a non-capital case. That's true. It reserved that issue for another day. That other day was Glover, where the United States Supreme Court did apply Strickland in a non-capital sentencing, ineffective assistance of counsel claim, and therefore clearly established it. Strickland explicitly reserves it for another day. Exactly. So by its own terms, Strickland does not provide that rule. It cannot clearly establish it if it reserves it. No, Strickland does not clearly establish it. Glover clearly establishes it. And the district court in this case found that even under the heightened AEDPA 2254d1 clearly established standard, Glover did establish that, but it was constrained by this erroneous Ninth Circuit panel decision that came out four years after Glover, did not mention Glover, did not distinguish it in any way, did not parse the precedent and explain why the principle didn't apply to the instant case or the facts didn't apply to the instant case, simply ignored it and declared that there was no clearly established Federal law on this point. And was that case after Glover? It was four years after Glover. Okay. So what do we do about that as a three-judge panel? It is a three-judge panel. We're a three-judge panel. So, and Glover was before it, so is our proper, I don't see, does Miller v. GAMI apply? Since it's not an intervening decision, so how could we? So there are three ways that this Court could attack the problem. One is to hold that the Ninth Circuit panel decision at issue Cooper-Smith is non-binding dicta, because according to United States v. Johnson, holdings require some sort of reasoned consideration. They didn't mention Glover or consider it ostensibly in the face of the opinion in any way. And so it's not a holding. It's simply dicta. But the decision itself cannot be based on a court of appeals finding. It has to be based on a Supreme Court finding, right? This Court's decision would be based on Glover. So even this case that you cite cannot be authority for the Supreme Court clearly establishing it? No. Glover is the authority for the Supreme Court establishing it. We have to re-extrude Glover. And so if we kind of circle back to the same query, I'm not sure I knew what the answer was.  Well, I'm not sure I know what the answer is. I'm just trying to figure out how you want us to see it as. There are other circuits that apply Strickland in ineffective assistance of counsel cases under a habeas context. There's no circuit split. Well, but is there any discussion of it? I mean, this seems to be a question that people have stumbled into without discussing. There are. And so I'm trying to find, is there a bright light out there I can point to and say, look, the Fifth Circuit has figured this out and tells us that this should be applied to a noncapital case based on Glover, even though Glover doesn't give an explicit description. It's obviously what it's doing. Anything that we can point to, or are you asking us basically to plow some new ground here? No. This is not ‑‑ this is an old rule under Teague. It was established in 2001 in Glover. There are ‑‑ But you're telling us it's established in Glover, but I haven't ‑‑ I mean, that's what, 12, 13 years since then. If nobody's talked about it and says it's established in Glover, it's a tougher sell. They're simply applying it because it is clearly established law. I would be happy to submit to this Court, after the argument, a list of cases from other districts. I realize I'm taking your time, but I do want to ask you quickly about the other part of the case that's been raised by the State. That is the adjudication by the district court that there has been, there was deficient performance here and was prejudice. And when I look at this case and try to compare it to other ineffective assistance cases, what's missing here for me is any explanation by defense counsel as to what the reasons for the decisions were. The State hypothesizes that it was a strategic decision because the attorney did get the report from Dr. Jaffe and elected, and it has to, I think, have been at some level a conscious decision not to go down that road to try something else. But we don't know, do we? We don't know. I disagree with that holding because the problem with this case is that the defense counsel didn't investigate these facts in the first place. It wasn't a conscious strategic decision not to use or present these facts. I thought he had a report that talked about her bipolar disorder, that the report also indicated that she had antisocial behavior. I thought the report also indicated that she wouldn't take her medications. I thought the report also indicated that the last time that she had treatment, that shortly thereafter she wound up going to the pediatrician. I'll be brief. I have less than one minute, and I would like a little bit of rebuttal, but that report You may answer the question. That report did not address the ultimate question that any sentencing counsel would know about a sentencing court would be interested in, which is recidivism. That report did not ever ask the psychiatrist in the second, the same psychiatrist was asked by habeas counsel to provide a second report, and he said, I was never asked to explain how the fact that she has an untreated severe bipolar disorder would impact her substance abuse treatment programs. The lawyer should have gotten more detail. It wasn't enough that she was antisocial, didn't take her medicine, and couldn't live in a community. It was not a reasonable investigation under the law. She didn't ask any of those pointed questions that are necessary to help the petitioner, and it's her duty to investigate mitigating evidence. Is your complaint now that it wasn't a reasonable investigation, or that he didn't put on evidence that would have changed the result in the Romero? It was not a reasonable investigation, so the sentencing counsel didn't have the facts necessary to present in the first place. But that's not enough. Don't you have to show that it's an unreasonable application? I mean, don't you have to show that the State's decision, that the jurors, reasonable jurors couldn't conclude differently, but that it is, for prejudice purposes, an unreasonable application of Supreme Court law?  The sentencing counsel didn't have the facts. The sentencing counsel didn't present the facts. The sentencing counsel failed in its investigation and duty. I know, but when the State Supreme Court ultimately ruled on the habeas, the record had already been supplemented. All the stuff was before the California Supreme Court, and it still made a determination that wouldn't have made any difference. The habeas court didn't grasp the issue that no mental illness evidence was presented. The habeas court spoke about, oh, we heard that she was beaten, raped, shot, horrible things happened to her, but the sentencing court had been concerned about recidivism, and those issues don't necessarily impact recidivism. What impacts recidivism is this person had an untreated mental illness, and until it was treated, her substance abuse treatment plans could not possibly work. That's what her psychiatrist said. The sentencing court should have heard that. So it wasn't such a damning statement when the State said, well, she walked away from her treatment plans. Of course she did. But she didn't have any treatment for her mental illness at that point. Thank you. Good morning. May it please the Court. I'm Deputy Attorney General Bill Bilderbeck on behalf of the Warden. Petitioner's basic argument, and she was very candid about it today, is that Davis and Coopersmith were wrongly decided, and this Court should simply come to another conclusion on the question that was adjudicated in those cases. Well, why would we be bound by Davis and this other case if the test is the applicable law clearly established by the Supreme Court at the time of the State court determination? Now, the State court determination that was made in this case was made after those two Supreme Court cases. So they wouldn't even pretend to bind what is the established law at the time that the Supreme Court of California had determined this Hagen's case would be. Well, but the question we would have to turn our attention to is, was there some decision from the United States Supreme Court between the time of the Davis and Coopersmith decisions and the time of the Superior Court decision? So why is Glover that decision? Well, because Glover predated both. That Glover was 2004. No, Your Honor. It was 2001. Coopersmith was. I think 2005, 2006. Yes, that was 2005, 2006. Don't hold me to 2001 for Glover, but I do know it was before both of those cases. So maybe it's not intervening. But suppose we are persuaded. We're not without recourse. We can call upon the Court to revisit the question via an en banc rehearing. Yes. So let me ask, what's the logic of saying that we should disregard the apparent application by the Court in Glover of the Strickland standard to a non-capital case? And is there any logic? I mean, Strickland, it's true, said this is a capital case. We're not speaking of non-capital. But Glover appears to be an application in a non-capital context. And I've never figured out why there's a logical difference between them. In effect, the decision now applies to plea negotiations and everything else. So is there a logical reason, as the law stands today or as it stood at the time of the State court's treatment of this case, why Strickland shouldn't be applied? Well, there is. And, of course, it's a narrower question than what the best rule or even the right rule is. It's a question of what is clearly established in United States Supreme Court holdings. So while- Well, that's why Glover becomes important. Because the argument being made by Petitioner is that Glover is it. It may not have said it in the words that would have been nice today, because it just seemed to assume the application. But if we can look back or if the Court en banc, if necessary, can look back and say, well, okay, Glover, here's an application of it, why shouldn't we do that? And then look forward to Lafleur v. Cooper, which is 2012, which sort of says, yeah, of course, that's the law, as though there's never been any – there's nothing to the contrary. Well, and again, the problem with Lafleur is, is it was simply an uncritical repetition of the language in Glover that this- Lafleur was a Supreme Court decision? I beg your pardon? Lafleur was a Supreme- Correct. How can you say it was uncritical? It only decides 79 cases a year. No, no. I mean, specifically the discussion – I'm speaking specifically of the discussion of Glover in Lafleur. The discussion of Glover in Lafleur was not important to the determination of that case. And it was a sort of matter-of-the-fact observation, and yet the fact that they threw  that out there, I mean, it's an observation that at least the Supreme Court, as of that time, thought that in Glover it had touched that base. Again, nobody's done it explicitly. Well, let me quote you. It says, The precedents also establish that there exists – this is from Lafleur – The precedents also establish that there exists a right to counsel during sentencing in both non-capital C, Glover, and then it cites other cases. So – non-capital and capital cases, and it says C, Wiggins. So it says it expressly, but it says it in a way that assumes that almost that the origin is strickland itself, which is where I think Judge – we have two judges on our court who have already expressed their opinion, Judge Graber and Judge Pius, that the right to six – the six-amendment right to counsel exists in non-capital, formal sentencing where there's a standard to be applied, right? Yes, Your Honor. But I would direct the Court back to that very language that you just recited to me. All it speaks of is a right to counsel. It does not talk about sentencing. Nor, Your Honor – And so you have a situation of the context of – and when they determine strickland, they specifically refer to the fact that there's so many differences in sentencing. In some places, judges have unfettered discretion. In some places, the states have a role in shaping what the sentence – in some sentences, in some courts, states, the juries make the determination. And the fact that you have a right to counsel is not the same thing as saying that ineffective assistance applies at all – at sentencing. There's a difference between a plea bargain and what you get out of a plea bargain and your right to counsel in a plea bargain, and then the idea that your counsel was deficient in a sentencing question. So whether you have a plea bargain or not is peripheral to the sentencing. It has to do with voluntariness, overreaching by the government, those kind of things. It's a completely different context. And to follow up on precisely the point the Court is making there, the question that we're grappling with here is what is the standard for assessing whether trial counsel was competent? While there might be a right to counsel, Strickland is unambiguously the test for a lot of decisions that trial counsel makes, for decisions during capital sentencing, and that's Strickland itself, for decisions during plea bargaining, that's Lafler v. Cooper. What's left unanswered – and this – I'm going to throw this ambiguity squarely on the feet of the United States Supreme Court – what is left unclear at this point, what is not clearly established is what is the test for determining whether trial counsel performed up to the Sixth Amendment standards during a non-capital sentencing proceeding. That question is still open. All right. Whether or not that question is open. We don't have – this isn't a sentencing that we're talking about, though. We're talking about a Romero motion. This is a motion. This is part of counsel's regular duties in representing a defendant. He's filing a motion. Why wouldn't all the things that go into trial counsel's standards of performance in Strickland apply to the filing – the investigation and filing and support of a motion to strike one of the three strikes? Well, because it is a motion that occurs during the non-capital. It's related to sentencing, right? I would disagree with that characterization, Your Honor. It is a sentencing motion. It is a motion which concerns wholly and solely and nothing but non-capital sentencing considerations. So I don't think you can – I don't think it would be reasonable to parse out a Romero motion and say, well, that doesn't really count as a non-capital sentencing proceeding when it is not. But why would you say a lawyer to be held to a lesser standard than Strickland when he files a motion to strike a strike under Romero? I wouldn't say that, Your Honor. What I'm saying is, is the United States Supreme Court has not clearly established what the test is. But does the United States Supreme Court have to identify each specific standard to which Strickland might apply before we can say that it's clearly established? Absolutely. When they themselves have told us unambiguously that they are reserving a specific proceeding and saying, we are expressing no opinion about the standard applicable to this specific proceeding. Until the Court returns to that specific proceeding and says, here we go, we are going to resolve the ambiguity that we previously created, until we get to that point in time, there is no clearly established law which has settled the question that they themselves. So that means the Supreme Court will start hearing a lot more cases, or we are never going to know the law on anything. No, Your Honor, because it's very rare for the Supreme Court, in my experience, it's very rare for the Supreme Court to do what they did in this case, which is to with great specificity and precision, carve out and say, the rule we are articulating today does not apply, or we are not letting you know whether it's going to apply to this particular situation. We don't know. We will let you know later. And until and unless they tell us, we are now going to resolve the ambiguity that we created in Strickland. The state of the law could not be said to be clearly established. Well, they said more in the recent case. It says, if the habeas court must extend the rationale before it can apply to the facts at hand, then by definition, the rationale was not clearly established at the time of the state court precedent. It was carefully constructed framework would be undermined if habeas courts introduced rules not fully established under the guise of extensions to existing law. So we can't just infer that they apply. It must be clearly established that they apply to the facts at hand. And that's precisely correct. And the Court has repeated that over and over again in numerous cases interpreting AEDPA, going all the way back to Lockyer v. Andrade at the very early stages of the AEDPA litigation, all the way through White v. Woodall just last term, where they have said repeatedly that even if it's a terrific rule, even if you think it's the right rule, even if every intendment would suggest that this is the rule we are going to announce when we get around to announcing it, until the Supreme Court itself explicitly announces the rule, the circuit court's hands are tied. Could you address the prejudiced finding of the district court here? I'd be happy to, Your Honor. And I think the big problem with the district court's prejudiced finding here is it ignored the determination, the conclusion, the diagnosis by the psychiatrist retained by Petitioner's counsel that Petitioner is a violent psychopath. And it was interesting to me that one of the things that just this morning trial counsel talked about, or excuse me, my colleague this morning talked about, was that this is a nonviolent person and how that, the fact that she is a nonviolent person was, should have been persuasive to the trial court in granting the Romero motion. But here we have the psychiatrist hired by the defense telling us that, no, although she might not have been convicted of violent crimes, her personality is that of a violent psychopath. And I have to say that unfortunately, she was antisocial and that she was a psychopath. I didn't know it had anything about her being violent. Yes, Your Honor, and I refer to the court to review the 2006 report. Your argument then would be how could it possibly be unreasonable for the state court to make a determination based upon all the stuff that they had that it wouldn't have made any difference, not that we would disagree with it, but that it was unreasonable and the jurors could not disagree. And I would say that that's equally true for the performance prong of Strickland here, Your Honor, where, I mean, I have to say that the repeated statements both in the briefing and in this morning from my opponent that trial counsel did not investigate Petitioner's mental state is simply wrong. That's factually not correct. There was a psychiatrist that was hired by the defense. That psychiatrist examined Petitioner and issued an opinion which had, which was, had some stuff that might have been useful for the defense, absolutely, but also had this, what this Court has previously referred to as a basket of cobras. This notion that your, that your client is, suffers from antisocial personality disorder is a basket of cobras. A reasonable lawyer could decide, I'm just going to go with the nonviolence. I don't want to introduce the notion that this person's a violent psychopath. I don't think that's going to help my case. Precisely so. I say I'm well over my time. You are well over your time. Thank you, counsel. Thank you very much. You had our help. You can have three minutes. He went over three minutes. Thank you. I'll be brief. Three quick points. In, in nowhere in any of the psychiatrist's reports, it, the Petitioner described as a violent psychopath. They talk about how when she was 12 years old, she had some violent thoughts. Well, she's not 12 years old at the time of her sentencing. She's 41, and I'm sure we all have some angry, violent thoughts once in a while. The point is she has not one single violent conviction. Two, while this court could go on bonk and resolve the case in that way, another way to do it and use fewer of the court resources would be to find that there is also interceding law in between Glover and the state habeas resolution of the Petitioner's case, particularly in Primo v. Moore. It's the United States Supreme Court's from 2011 decision that says that whether before, during, or after trial, when the Sixth Amendment applies, the formulation of the Strickland test is the same, reasonable competence in representing the accused. So that's another confirmation that Strickland has. But that doesn't have anything to do with AEDPA. You still have AEDPA, right? In a, in a state proceeding, you still have an AEDPA that it must be unreasonable. Yes, correct. Okay. So that doesn't change. So that doesn't change, but it's further confirmation. The fact that it was different, that it was wrong, doesn't change that it's got to be an unreasonable finding. It's further confirmation that Glover had it correct, that Strickland is the standard to measure the ineffective claim in this context. So what is the date, the relevant date that we're looking at? Is it March 30, 2011? It is. That's the final decision of the state habeas resolution of the case. Okay. You agree with that? Yeah. You're nodding. Okay. My last quick point is I think that the government was dangling a red herring here when it talked about how the Supreme Court has not decided exactly what counsel must do in order to be reasonably competent in the circumstance. There's a case on point 2011, United States Supreme Court case Cullen v. Pinholster, where the Supreme Court says Strickland itself rejected the notion that the same investigation will be required in every case. It was talking about an ineffective assistance of counsel claim in the sentencing context. It said that specific guidelines are not appropriate. No particular set of detailed rules for counsel's conducts can satisfactorily take into account the variety of circumstances faced by defense counsel. It needs to be a case-by-case decision. And in this case, defense counsel simply didn't make the right inquiries. All right. Thank you. Thank you, counsel. Gair v. Labrador will be submitted.
judges: Benavides, WARDLAW, CLIFTON